CITY OF FAIRBORN, APPELLEE, *v.*
ORRICK, APPELLANT.

(No. 87CA86—Decided June 9, 1988.)

*Joseph Fodal,* city prosecuting attorney, for appellee.

*Lawrence J. Greger,* for appellant.

FAIN, J. Defendant-appellant Leslie Orrick appeals from his conviction and sentencing for driving under a suspension. Orrick argues that the police officer who checked his registration lacked the requisite articulable and reasonable suspicion to do so. We agree; therefore, Orrick's conviction will be reversed. Since it is clear from the record that there was no other evidence to support the conviction, he will be ordered discharged.

## I

The city of Fairborn has not filed a brief; therefore, in accordance with App. R. 18(C), we will accept Orrick's statement of the facts and issues as correct.

Orrick was driving a motorcycle one summer evening in the city of Fairborn, when Police Officer Andrew Stockton observed that the passenger riding with Orrick was not wearing protective eyegear as required by Fairborn city ordinance. Orrick had the required eyegear, and was not observed by Stockton to be driving the motorcycle improperly, or, for that matter, to be doing anything either wrong or of a suspicious nature.

Stockton stopped the motorcycle for the sole reason that he observed that the passenger lacked the requisite eyegear.

Following the stop, Stockton questioned the passenger, and concluded that the passenger was under the influence of alcohol. Stockton testified that Orrick did not appear to be intoxicated. Stockton did not cite the passenger, but merely advised both the driver and the passenger that the passenger should be wearing protective eyegear in accordance with Fairborn's local ordinances.

At some point following the stop, Stockton asked to see Orrick's driver's license. Orrick told Stockton that he was under a license suspension, and Stockton verified that through a computer check. Stockton then charged Orrick with driving under suspension.

Orrick moved to suppress the evidence obtained following Officer Stockton's request to see his driver's license. This motion was overruled. Orrick then pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Orrick appeals.

## II

Orrick's sole assignment of error is as follows:

"The trial court erred in failing to

sustain the defendant's motion to suppress all evidence gained after the justification of the stop was complete."

Orrick relies upon *State* v. *Chatton* (1984), 11 Ohio St. 3d 59, 11 OBR 250, 463 N.E. 2d 1237. In *Chatton,* a police officer stopped a car after noticing that the car had no license plates. After approaching the car on foot, the officer noticed a cardboard temporary license lying on the rear deck of the car directly beneath the rear window. Upon reaching the driver's side of the car, the officer asked to see the driver's license; when this license was produced, a computer check disclosed that the license was under suspension. The Ohio Supreme Court held that while the initial stop of the car was reasonable since the police officer could not see any license plates, it was unreasonable to detain the driver in order to check his driver's license and automobile registration once the police officer had noted the temporary license placard. At least as of the date of *Chatton,* there was no legal requirement that a temporary license placard be displayed in any particular fashion. Therefore, once the police officer observed the temporary license placard, his basis for detaining the driver was extinguished.

We agree with Orrick that *Chatton* requires a reversal in this case. Officer Stockton's "articulable and reasonable suspicion" centered exclusively upon the passenger of the motorcycle. He admitted that he had no reason to suspect the driver. Consequently, although it was reasonable for the police officer to stop the motorcycle for the purpose of citing the passenger or to give him a warning, there was no proper basis for detaining the driver of the motorcycle in order to check his driver's license.

A different case would be presented if Officer Stockton had had an articulable and reasonable suspicion concerning Orrick. There may even be circumstances under which the behavior of a passenger may give rise to articulable and reasonable suspicion concerning the driver. In this case, however, the mere fact that the passenger was not wearing the requisite protective eyegear and appeared intoxicated, especially in view of Officer Stockton's testimony that Orrick did not appear to be intoxicated, was not sufficient to give rise to an articulable and reasonable suspicion concerning Orrick, the driver. In fact, at no point during his testimony did Officer Stockton articulate any suspicion concerning Orrick until the point at which Orrick, in response to Stockton's request to see his driver's license, told Stockton that he was driving under a suspension.

A different case might also have been presented if Stockton had testified that he was merely asking to see Orrick's driver's license in order to make note of Orrick's name and address as a potential witness in a criminal prosecution against his passenger. There was no such evidence in this case, however, and Stockton did not cite Orrick's passenger.

We conclude from *State* v. *Chatton, supra; State* v. *Frye* (1985), 21 Ohio App. 3d 133, 21 OBR 141, 487 N.E. 2d 580; and *Akron* v. *Sharpe* (1986), 26 Ohio Misc. 2d 1, 26 OBR 212, 498 N.E. 2d 518, that the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer "open season" to investigate matters not reasonably within the scope of his suspicion. Of course, anything that the police officer discovers during the course of an investigation that is within the scope of his articulable and reasonable suspicion may give rise to additional suspicions; he is not required to turn a blind eye to those things that he observes while

conducting a reasonable investigation. However, that is not what occurred in this case. In this case, Officer Stockton has admitted that he had no grounds for suspecting Orrick at the time that he asked to see Orrick's license.

Orrick's sole assignment of error is sustained.

### III

Orrick's sole assignment of error having been sustained, the judgment of the trial court will be reversed. Since it is clear from the record that the state had no evidence to convict Orrick other than the evidence that should have been suppressed, Orrick will be discharged.

*Judgment reversed
and defendant discharged.*

BROGAN and WOLFF, JJ., concur.